Entered on Docket
July 24, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: July 20, 2012

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>WILLIAM P. BYRD and<br>PAMELA MARY KO-BYRD,<br><br>                Debtors.<br>_____<br>MICHILLE LY,<br>                Plaintiff,<br><br>v.<br><br>WILLIAM P. BYRD and<br>PAMELA MARY KO-BYRD,<br><br>                Defendants.<br>_____ | Bankruptcy Case<br>No. 11-13788DM<br><br>Chapter 7<br><br><br><br>Adversary Proceeding<br>No. 12-3003DM |

MEMORANDUM DECISION ON DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS AND PLAINTIFF'S MOTION FOR LEAVE
TO FILE AMENDED COMPLAINT

    On June 29, 2012, the court held a hearing on the motion of defendants William P. Byrd and Pamela Mary Ko-Byrd ("Debtors") for judgment on the pleadings and on the motion of Michille Ly ("Plaintiff") for leave to amend the complaint. Plaintiff alleged in her Complaint to Determine Dischargeability of Debt

-1-

("Complaint") that she is entitled to a nondischargeability judgment against Debtors pursuant to 11 U.S.C. § 523(a)(2).[1] After Debtors filed their motion for judgment on the pleadings, Plaintiff moved to amend her complaint to add a section 523(a)(6) claim. For the reasons stated below, the court will grant Debtors' motion for judgment on the pleadings but will also grant limited leave to Plaintiff to amend her Complaint.

Because the pleadings are closed (i.e., a complaint and answer have been filed and no counterclaims have been asserted), Defendants filed their motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b)). When ruling on a Rule 12(c) dismissal motion, the court assumes the facts alleged in Plaintiff's complaint are true. United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1053 (9th Cir. 2011). "In reviewing the dismissal of a complaint, [the court] inquire[s] whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Id. at 1054. Here, the facts alleged in the Complaint do not state a plausible claim for relief under section 523(a)(2) or (a)(6).

I.  FACTS ALLEGED IN COMPLAINT

In 2003, Plaintiff purchased a convenience store from a father and son, Vernon Brumley Sr. ("Senior") and Vernon Brumley,

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, as revised by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.

-2-

Jr. ("Junior"). See ¶¶ 6-8 of the Complaint. She made one payment (the down payment) in the amount of $2,500. See Exhibit "A" to the Complaint at 2:17. In late 2003, she realized that the Brumleys had misrepresented the status of the convenience store's liquor license and filed a small claims court action against Junior for return of the down payment. See ¶¶ 9 of the Complaint and Exhibit "A" to the Complaint at 1:25-2:16. Junior then filed a breach of contract action against Plaintiff in the superior court. See ¶¶ 9 of the Complaint. Plaintiff filed a cross-claim and obtained a default judgment in the amount of $61,735 against Junior in 2006.[2] Id. The Complaint does not reflect the date that Junior's state court action was filed or when Plaintiff's cross-claim was filed.

In August 2002, Junior purchased a house on Santa Inez Way in Petaluma for $414,000. In May 2005, after Plaintiff filed her action in small claims court against Junior (and presumably after she filed the cross-claim in superior court), Junior sold that house to Debtor Ko-Byrd for $560,000. See ¶¶ 10-11 of the Complaint. In January 2003, Junior bought a house on Sierra Drive in Petaluma for $263,000; he sold it to debtor Ko-Byrd for $525,000 on May 11, 2005. Id. The sales to Debtor Ko-Byrd occurred well before Plaintiff obtained a default judgment against Junior in January 2006. See ¶¶ 9-11 of the Complaint. Moreover,

---

[2] In 2005, Senior filed his own bankruptcy case in the Santa Rosa division. Plaintiff filed a nondischargeability action against him, seeking damages resulting from the misrepresentations regarding the condition of the convenience store. Judge Jaroslovsky awarded her a judgment under section 523(a)(2) for $12,913.38 in actual damages and $22,308.00 in consequential damages. See Exhibit "A" to the Complaint.

-3-

the sales appear to be for value, as Junior sold them within two to three years of his purchase for significant profit (i.e., he sold the Sierra Drive property for twice the purchase price and sold the St. Inez property for almost $150,000 more than he paid).³

After obtaining a default judgment against Junior, Plaintiff filed a state court action against him and Debtors alleging that the sale of the houses to them was a fraudulent transfer intended to assist him "with disposing of the assets he had which could have satisfied a judgment obtained by Ly." See ¶¶ 12-17 of the Complaint. Debtors entered into a settlement with Plaintiff, but later defaulted in payments. Plaintiff thereafter obtained a stipulated judgment against Debtors in the amount of $164,441.65. See ¶¶ 17 of the Complaint. Plaintiff did not attach the state court complaint, the settlement agreement or the stipulated judgment to the Complaint here. Therefore, nothing in the record reflects that the state court action or the judgment was based solely on allegations of actual fraud by Debtors.

II. DISCUSSION

A. Case Law

Plaintiff is seeking a determination that her judgment against Debtors is nondischargeable under section 523(a)(2) and seeks to amend her Complaint to assert that the judgment debt is

---

³At the hearing on June 29, Plaintiff's counsel conceded that Plaintiff is not contending that the transfers were for less than reasonably equivalent value. She argued that the value given by Debtor Ko-Byrd was irrelevant, because Debtors -- purportedly acting in a conspiracy with Junior -- bought the properties solely to deprive Plaintiff of assets which she could liquidate when and if she eventually obtained a judgment against Junior.

-4-

nondischargeable under section 523(a)(6).  While section 523(a)(2) does except from discharge debts for money or property obtained by "actual fraud," Plaintiff has not alleged what money or property was obtained from her by the Debtors.  In <u>Quarre v. Saylor (In re Saylor)</u>, 178 B.R. 209 (9th Cir. BAP 1995), the debtors had transferred three properties in exchange for a life estate in one of them while a state court breach of contract action was pending against the husband.  The creditor had not obtained a judgment against the debtors on the merits of the breach of contract action prior to the transfer.  After the debtors/transferors filed bankruptcy, the creditor filed a nondischargeability action against them under section 523(a)(2) and (a)(6), alleging that they had transferred property solely to hinder his collection efforts.  The bankruptcy court dismissed the section 523(a) claims, and the BAP affirmed.  The BAP held that a creditor's "property right" to pursue a fraudulent transfer under state law did not constitute "property" which could be the subject of a section 523(a)(6) conversion claim.  This court agrees with <u>Saylor</u>.

    Plaintiff argues that <u>Saylor</u> is inapplicable here because she has obtained a stipulated judgment against Debtors in her fraudulent transfer action in state court.  Plaintiff cites three cases to support her contention that Debtors engaged in actual fraud by impairing her ability to collect on her post-transfer judgment against Junior.  All of the cases are distinguishable.

    In the first case, <u>McClellan v. Cantrell</u>, 217 F.3d 890 (7th Cir. 2000), the plaintiff held a security interest in equipment.  After the plaintiff sued in state court to, among other things,

Case: 12-03003    Doc# 20    Filed: 07/20/12    Entered: 07/24/12 07:51:52    Page 5 of 14

enjoin the transfer of the collateral, the borrower transferred the machinery to his sister for $10, who then sold it for $160,000 "and she's not telling anyone what has happened to that money." Id. at 892. The sister thereafter filed a chapter 7 case, and the creditor filed a nondischargeability action against her based on the fraudulent transfer of the equipment to her and her subsequent sale of it and her refusal to turn over the proceeds. The Seventh Circuit concluded that the debtor's participation in the transfer and subsequent sale of the equipment was "actual fraud." Here, unlike the creditor in McClellan, Plaintiff had no security or ownership interest in the properties sold to Debtors by Junior; she did not even have a judgment against the transferor (i.e., Junior) yet. More importantly, the transfer here was for value (as discussed later). It was not a transfer of collateral worth $160,000 for $10. Finally, Plaintiff has not alleged any concealment of the property or proceeds by Debtors, whereas the debtor in McClellan actively concealed the proceeds of her disposal of the collateral. Id.

The second case cited by Plaintiff, Maxfield v. Jennings (In re Jennings), 670 F.3d 1329 (11th Cir. 2012), is likewise distinguishable. There, the debtor acted as the transferor and had already been held individually liable on a judgment debt on an alter ego theory. The plaintiff had filed a personal injury action against the debtor's ex-husband and two handgun manufacturing and distributing companies owned by him. The plaintiff later amended the complaint to add the debtor, a partnership created by the debtor and her ex-husband, and the husband's then-current third wife, alleging that they were liable

-6-

for the personal injury damages under partnership and alter-ego theories. Thereafter, at her ex-husband's direction, the debtor executed a deed (on behalf of the partnership owned by them) transferring real property to the third wife.

The debtor, her ex-husband, the partnership, and the two other defendant companies filed bankruptcy one day after a state court jury entered a personal injury judgment in favor of the plaintiff. The plaintiff filed declaratory actions in each case to determine which assets their creditors could reach. The bankruptcy court held that the debtor had participated in a joint venture with the other defendants/debtors and was therefore jointly and severally liable for the debts owed by them on the personal injury judgment. The bankruptcy court also found that the debtor was a conspirator in the fraudulent transfer of the property and was thus jointly and severally liable to the ex-husband's creditors. The debtor did not contest these findings.

Thereafter, the plaintiff filed a nondischargeability action against the debtor, and the bankruptcy court entered judgment in favor of the debtor. The district court reversed, and the Eleventh Circuit affirmed the district court, holding that because the plaintiff had obtained a fraudulent transfer judgment from the bankruptcy court before filing his nondischargeability action, he had "established a right to payment based on the damage [the debtor] did to his property interest in collecting on his personal injury judgment by transferring the property." Id. at 1333. As the evidence showed that the debtor had transferred the property willfully and maliciously, the court found that the "fraudulent transfer was not dischargeable as part of the bankruptcy

-7-

proceeding."

Here, Debtors were not the transferors. Based on the allegations of the Complaint, Debtors paid reasonably equivalent value for the property. Plaintiff has not, unlike the plaintiff in <u>Jennings</u>, alleged that Debtors are alter egos of the tortfeasor (here, Junior) or otherwise independently liable for his actions or for any judgment entered against him. Nothing pled in the complaint would support a determination that Debtors inflicted a willful and malicious injury on Plaintiff; no facts have been pled would even lead to an inference of willful and malicious intent.[4] Unlike the plaintiff in <u>Jennings</u>, Plaintiff does not allege how Debtors' purchase of the properties at a profit that was more than five times her eventual judgment amount impaired her particular efforts to collect her debt, nor otherwise caused her any damage. Plaintiff's generalized allegations that Debtors and Junior engaged in a scheme to prevent her from collecting her judgment against Junior do not state a claim for relief against Debtors under section 523(a)(2)(A) or under section 523(a)(6).

Finally, Plaintiff relies on <u>Murray v. Bammer (In re Bammer)</u>, 131 F.3d 788 (9th Cir. 1997). In <u>Bammer</u>, the debtor's mother had

---

[4] Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The "willful" requirement is separate and distinct from the "malicious" requirement. <u>See</u> <u>Barboza v. New Form, Inc. (In re Barboza)</u>, 545 F.3d 702, 706 (9th Cir. 2008). Willfulness requires a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61 (1998); <u>Ditto v. McCurdy</u>, 510 F.3d 1070 (9th Cir. 2007). "A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" <u>Carrillo v. Su (In re Su)</u>, 290 F.3d 1140, 1146-47 (9th Cir. 2002) (quoting <u>Petralia v. Jercich (In re Jercich)</u>, 238 F.3d 1202, 1209 (9th Cir. 2001)).

-8-

embezzled $900,000 from various victims and told her son what she did. The son knew that his mother was negotiating a plea agreement that contemplated restitution in lieu of prison time. "Nevertheless, she and [debtor] hatched and implemented a scheme with respect to the equity in her house, an asset that should have been available to compensate her victims." Id. at 790. She conveyed to her son a third mortgage on her real property for no consideration; he then "covertly" obtained a loan on her behalf "with no intention of repaying it even though he had the wherewithal to do so." His mother did not use the loan proceeds to repay her victims but to hire an attorney and to pay other personal expenses. The Ninth Circuit held that the injury was malicious as the debtor had engaged in fraudulent conduct that deprived his mother's embezzlement victims of ability to obtain restitution.

Bammer is distinguishable in that Debtors here paid consideration in exchange for the property. But more significantly, the Supreme Court's decision in Kawaauhau v. Geiger, 523 U.S. at 61, brings the Bammer holding into question. The Supreme Court held that in order for an act to be willful, the act must be akin to that of an intentional tort under state law, in that the actor must intend the consequences or injury resulting from the act rather than just the act itself. Id. at 977. This holding modified the previous standard set forth in Bammer, which required only an intentional act, rather than an intended injury.

B. Sufficiency of Allegations of Complaint

At the hearing on June 29, Plaintiff's counsel conceded that Plaintiff is not contending that the transfers of property by

-9-

Junior to Debtor Ko-Byrd were for less than reasonably equivalent value. She instead argues that the value given by Debtor Ko-Byrd was irrelevant, because Debtors -- purportedly acting in a conspiracy with Junior -- bought the properties solely to deprive Plaintiff of assets which she could liquidate when and if she eventually obtained a judgment against Junior. Plaintiff's counsel also argued that badges of fraud existed to show that Debtors conspired with Junior to "defraud, hinder or delay" Plaintiff's ability to collect any subsequent judgment awarded against Junior, but (as discussed later) Plaintiff has not adequately alleged facts to demonstrate the existence of such badges of fraud. Rather, she makes general conclusory allegations that Defendants "agreed to facilitate the swift transfer of [Junior's] property so that his assets would be liquid and easily hidden from Plaintiff." See ¶¶ 12-16 of the Complaint.

Apart from an allegation that the Brumleys and Debtors were friends and that the Debtors purportedly knew that Junior wanted to liquidate assets to frustrate collection efforts by Plaintiff when and if she prevailed in her claims against him, no facts (as opposed to conclusory allegations) have been pled to support Plaintiff's nondischargeability claim or to demonstrate sufficient "badges of fraud" to support a cause of action for actual fraud by Debtors. See Cal. Civ. Code § 3439.04(b) (listing badges of fraud). Plaintiff has not alleged that Junior retained possession or control of the transferred properties, that the transfers were concealed, that the transfers were of substantially all of the Junior's assets, that Junior became insolvent shortly after the transfers, or that the transfers were less than for reasonably

-10-

Case: 12-03003    Doc# 20    Filed: 07/20/12    Entered: 07/24/12 07:51:52    Page 10 of 14

equivalent value. See Cal. Civ. Code § 3439.04(b) and Legislative Committee Comment (5) thereto (referring to the consideration courts give to the "badges of fraud" in fraudulent transfer actions). Rather, the factual allegations of the Complaint indicate that the profits from the sales ($146,000 for the St. Inez property + $262,000 for the Sierra property) exceeded the amount of Plaintiff's subsequent (2006) default judgment ($61,735) by almost $350,000. In essence, the facts set forth in paragraphs 10 and 11 of the Complaint regarding the value transferred by Debtors in exchange for the properties seemingly contradict Plaintiff's contention that the sales were actually or constructively fraudulent.

Plaintiff argues that dismissal of the Complaint is inappropriate because she had obtained a fraudulent transfer judgment against Debtors prior to their petition date. Given the the facts pled in the Complaint and in the absence of the state court complaint and judgment, the court disagrees. In order for the state court judgment to have preclusive effect for purposes of section 523(a)(2), there must be a finding or admission that the Debtors, as transferees, acted with actual fraud. McClellan, 217 F.3d at 894-95 ("when a conveyance is merely constructively fraudulent, . . . the transferee is not guilty of an actual fraud against the creditor and so the creditor cannot use section 523(a)(2)(A) to prevent the transferee from discharging the debt in bankruptcy."). A fraudulent transfer judgment in and of itself will generally not suffice, as a court can enter a fraudulent transfer judgment even where the transferee acted

-11-

innocently.[5] A judgment that a transfer is constructively fraudulent does not require a showing of intent on the part of the transferor or transferee; an actually fraudulent transfer judgment can be based solely on the intent of the transferor.[6]

Without a specific finding or admission of Debtors' intent, issue preclusion would not apply, as the issue sought to be precluded (the question of Debtors' intent) would not be identical to the one necessarily and actually decided in the state court fraudulent transfer action. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001).[7] Therefore, unless Plaintiff can

---

[5] Donell v. Kowell, 533 F.3d 762 (9th Cir. 2008) (applying California's Uniform Fraudulent Transfer Act, the court held that an innocent investor in an actually fraudulent Ponzi scheme was liable as a transferee of an fraudulent conveyance); Jackson v. Mishkin (In re Adler, Coleman Clearing Corp., 263 B.R. 406 (S.D.N.Y. 2001) (for the purposes of determining the existence of the elements of a section 548 action to avoid a fraudulent transfer, "the transferee's good faith or lack of it does not matter.").

[6] In re Cahillane, 408 B.R. 175, 191 (Bankr. N.D. Ind. 2009) (in determining actual fraud, the "focus of the inquiry into actual intent is on the state of mind of the debtor; neither malice nor insolvency are required; and culpability on the part of the transferee is not essential").

[7] Under California law, the party asserting issue preclusion has the burden of establishing the following requirements:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Harmon, 250 F.3d at 1245.

Case: 12-03003   Doc# 20   Filed: 07/20/12   Entered: 07/24/12 07:51:52   Page 12 of 14

allege with specificity facts to support her conclusory allegation that Debtors acted with intent to defraud her or can demonstrate that the state court actually and necessarily decided the issue of intent, this adversary proceeding must be dismissed on the pleadings.

Similarly, unless Plaintiff can amend her complaint to allege specific facts to show that Debtors bought the properties for the purpose of injuring her, any claim under section 523(a)(6) also fails on the pleadings.[8] Applying <u>Kawaauhau v. Geiger</u> (discussed previously), the Ninth Circuit has held a that section 523(a)(6) applies only where a debtor willed or desired the harm, or believed that the injury is substantially certain to occur as a result of his or her behavior. <u>Su</u>, 290 F.3d at 1146-47. The test for determining such intent is subjective, not objective. <u>Id.</u> Given that Debtors bought the properties at prices significantly higher than their purchase prices and before Plaintiff had obtained any judgment against Junior, Plaintiff must allege specific facts (not conclusory allegations) to support the plausibility of a section 523(a)(6) actions under the strict standards of <u>Kawaauhau v. Geiger</u> and of <u>Su</u>.

---

[8]In their opposition to Plaintiff's motion to amend, Debtors argue that as the deadline for filing nondischargeability actions has passed, any claims under section 523(a)(6) would be untimely. The court disagrees. As long as the newly-added theories of relief are based on the same set of facts or transactions as those pled in the initial Complaint, they relate back to the date of the Complaint. <u>First Fed. Sav. Bank of Rogers v. Gunn (In re Gunn)</u>, 111 B.R. 291 (9th Cir. BAP Cal. 1990). The court will therefore allow Plaintiff to amend the Complaint to add the section 523(a)(6) claim but the facts alleged to support it must arise out of the same transactions described initially. And, as with the section 523(a)(2) claims, the facts alleged in the Amended Complaint should demonstrate that the claims are plausible.

-13-

Even though the court doubts that a plausible 523(a)(2) or (a)(6) claim can be alleged on the facts of this case, it will nonetheless allow Plaintiff to amend her complaint to state with more specificity facts to support her allegations. The court cautions Plaintiff that Debtors may be entitled to sanctions under Rule 9011 if the amended complaint does not set forth colorable claims for relief. The court is concurrently issuing its order granting both motions.

**END OF MEMORANDUM DECISION**